UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**CLEVELAND S.,**

                      **Plaintiff,**                              21-CV-6742Sr

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                      **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #11.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on September 4, 2018, at the age of 40, alleging disability due to bipolar disorder, social anxiety disorder, anger issues, auditory hallucinations and a learning disability. Dkt. #5, pp.275 & 279.

On April 28, 2020, plaintiff appeared by telephone conference call with counsel and testified, along with an impartial vocational expert ("VE"), Martina

Henderson, at an administrative hearing before Administrative Law Judge ("ALJ"), David Neumann. Dkt. #5, pp.41-55. Plaintiff testified that he graduated from high school with a special education diploma and that he has a low reading and spelling level. Dkt. #5, pp.47 & 49. His speech is not good due to a stutter and he has difficulty understanding people talking to him. Dkt. #5, p.49. Plaintiff hears things and sometimes talks to himself. Dkt. #5, pp.49 & 55-60. He has difficulty remembering things. Dkt. #5, p.53. He has a temper and doesn't feel comfortable around groups of people. Dkt. #5, pp.49 & 60-61. When he is angry, he needs to be alone to calm down. Dkt. #5, p.62. It is difficult for him to concentrate when he is angry. Dkt. #5, p.64. He was fired from a job because he yelled back at his boss who was criticizing him. Dkt. #5, p.63. He has anxiety attacks sometimes and starts shaking. Dkt. #5, p. 64. He does not sleep much. Dkt. #5, p.65. Plaintiff lives with his mother and socializes with his children. Dkt. #5, pp.46 & 61. He found therapy was helpful, but was not attending due to the pandemic. Dkt. #5, p.65. He grocery shops at the corner store, does laundry, cooks meals and watches television. Dkt. #5, pp.68-69.

When asked to assume an individual with plaintiff's age, education and lack of relevant work experience who was limited to occasional interaction with the public, no more than occasional changes in the work setting, and no production rate or pace work who should avoid climbing ropes, ladders and scaffolds, the VE testified that such an individual could work as a hand packager, industrial cleaner, or dishwasher, each of which were unskilled, medium exertion positions. Dkt. #5, p.71.

On March 24, 2021, plaintiff appeared by telephone conference call with counsel along with an impartial medical expert, Chukwuemeka Efobi, M.D., at a supplemental hearing before ALJ Neumann to address the conflict between forms submitted to the Monroe County Department of Human Services indicating very limited functioning and the results of consultative examinations conducted in October 2018 and October 2020. Dkt. #5, pp.75-110. Dr. Efobi, a board certified psychiatrist, testified that he had reviewed the limited medical records, which the ALJ confirmed were all the records available, and opined that they lacked any concrete diagnosis. Dkt. #5, pp.85-86 & 90.

Dr. Efobi noted that although the medical records contained subjective reports of symptoms, and occasional observations of anxious or irritable mood and tangential thoughts or impaired judgment, mental status examinations were within normal limits. Dkt. #5, pp.91 & 99. Dr. Efobi explained that an individual's complaints upon initial presentation generate a working diagnosis which carries forward throughout treatment regardless of improvements in presentation. Dkt. #5, pp.100-101. As a result, Dr. Efobi testified that it was important to assess the severity and persistence of an individual's historic symptoms through objective findings such as mental status examinations. Dkt. #5, p.101. Dr. Efobi further noted that plaintiff was discharged from treatment after having met his treatment goals with a notation that plaintiff denied having any anger outbursts or anxiety and felt that he could manage his depression. Dkt. #5, p.91.

Based upon plaintiff's border range intellectual ability, Dr. Efobi opined that plaintiff would have mild to moderate limitations in understanding, remembering or applying information; mild to moderate limitations in interacting with others; mild limitations in concentration, persistence or maintaining pace; and mild limitations in his ability to adapt or manage himself. Dkt. #5, pp.92-93. Despite these limitations, Dr. Efobi opined that plaintiff could perform simple, routine, repetitive work with occasional interactions with supervisors, coworkers and the general public. Dkt. #5, pp.93-95.

The ALJ rendered a decision that plaintiff was not disabled on April 23, 2021. Dkt. #5, pp.14-25. The Appeals Council denied review on October 22, 2021. Dkt. #5, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on December 15, 2021. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court

should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of September 4, 2018; (2) plaintiff's unspecified schizophrenia spectrum disorder, unspecified depressive disorder - rule out persistent depressive disorder/dyshthymic disorder, unspecified anxiety disorder - rule out generalized anxiety disorder and panic disorder, impulse control disorder, and marijuana and alcohol use disorder - in remission, constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform a full range of work at all exertional levels with no more than occasional interaction with supervisors and the public in a low stress job defined as having no more than occasional changes in the work setting and without production rate or pace work; and (5) plaintiff was capable of working as a hand packager, dish washer or industrial cleaner, each of which were unskilled, medium exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #5, pp.16-25

Plaintiff argues that the ALJ did not properly evaluate the persuasiveness and supportability of opinion evidence from plaintiff's mental health counselor ("MHC"), Michelle Squicciarini. Dkt. #7-1, pp.9-13. Specifically, plaintiff argues that the ALJ overlooked portions of treatment notes that supported MHC Squicciarini's opinions regarding plaintiff's limitations; failed to address her August 2018 opinion; and failed to discuss other evidence that supported her opinion. Dkt. #7-1, pp.13-14. Plaintiff also argues that the ALJ erred in relying upon Dr. Efobi, a non-examining source, over plaintiff's treatment provider. Dkt. #5, p.16. Finally, plaintiff argues that although the ALJ

found Dr. Deneen's opinion persuasive, the RFC did not account for Dr. Deneen's opinion that plaintiff had moderate limitations for sustaining concentration and performing tasks at a consistent pace, as well as regulating emotions, controlling behavior and maintaining well being. Dkt. #5, pp.17-21.

The Commissioner responds that the ALJ properly considered opinions from plaintiff's treating therapist, but reasonably declined to rely upon them because they were not adequately supported by contemporaneous treatment notes of clinical observations. Dkt. #9-1, pp.2 & 14-17. The Commissioner further responds that the ALJ properly accounted for Dr. Deneen's opinion of moderate limitations in regulating emotions and maintaining concentration and pace by restricting plaintiff to unskilled, low stress jobs with no more than occasional changes in the work setting and no production rate or pace work. Dkt. #9-1, pp.19-21.

Plaintiff replies that it is clear that the ALJ did not analyze all of MHC Squicciarini's opinions and did not properly address supportability and consistency. Dkt. #10, p.2. Plaintiff further replies that the moderate limitations identified by Dr. Deneen with respect to sustaining concentration and performing tasks at consistent pace, as well as regulating emotions, controlling behavior and maintaining well-being, were not addressed by the ALJ. Dkt. #10, p.4.

The record of evidence indicates that plaintiff presented to the Evelyn Brandon Health Center for a mental health evaluation on February 20, 2018, reporting a

Case 6:21-cv-06742-HKS   Document 12   Filed 03/29/24   Page 8 of 15

history of aggression and violence and difficulties managing anger. Dkt. #5, p.460. Depression screening revealed moderate depression and anxiety screening revealed moderate anxiety. Dkt. #5, p.467. MHC Squicciarini noted that plaintiff demonstrated high level of motivation for treatment and interest in continued individual psychotherapy. Dkt. #5, p.462.

MHC Squicciarini completed a Monroe County Department of Human Services Psychological Assessment for Determination of Employability ("DHS Employability Assessment"), on March 21, 2018, indicating that plaintiff was very limited (unable to function 25% or more of the time), in his ability to maintain attention and concentration for role tasks and moderately limited (unable to function 10-25% of the time), in his ability to follow, understand and remember simple instructions and directions; perform simple and complex tasks independently; and regularly attend to a routine and maintain a schedule.  Dkt. #5, p.541.

On August 13, 2018, plaintiff presented as depressed and irritable, with the theraply session focusing on processing recent conflicts with the Monroe County Department of Human Services. Dkt. #5, pp.472-473. His mental status examination was otherwise within defined limits, with fair insight and judgment and full range affect. Dkt. #5, p.473.

On August 28, 2018, MHC Squicciarini noted that plaintiff presented to a therapy session as euthymic and cooperative. Dkt. #5, p.476. His mental status

-8-

examination was within defined limits, with fair insight and judgment and full range affect. Dkt. #5, pp.476-477.

On September 10, 2018, MHC Squicciarini observed plaintiff to be depressed and cooperative, with tangential coherency. Dkt. #5, p.479. The therapy session focusing on processing an upcoming anniversary of his deceased brother, to which plaintiff responded positively. Dkt. #5, p.479. His mental status examination was otherwise within defined limits, with fair insight and judgment and full range affect. Dkt. #5, p.480.

On October 1, 2018, plaintiff presented as depressed and anxious, with tangential coherency and preoccupation. Dkt. #5, pp.482-483. His mental status examination was otherwise within defined limits, with fair insight and judgment and full range affect. Dkt. #5, pp.482-483.

On October 30, 2018, Todd Deneen, Psy.D., conducted an independent consultative psychiatric examination which noted plaintiff's cooperative demeanor, fair social skills, coherent thought process, mildly impaired attention and concentration, intact recent and remote memory skills, and borderline intellectual functioning. Dkt. #5, pp.491-92. Plaintiff reported that he uses public transportation, manages his own money, occasionally sees his friends, attends programs for probation, shops monthly, and cleans, cooks and washes laundry weekly. Dkt. #5, p.492. Dr. Deneen opined that plaintiff would have no limitation understanding, remembering, and applying simple

directions and instructions and maintaining personal hygiene and appropriate attire; mild limitation sustaining an ordinary routine and regular attendance at work; and moderate limitation using reason and judgment to make work related decisions, interacting adequately with supervisors, coworkers and the public, sustaining concentration and performing a task at a consistent pace, and regulating emotions, controlling behavior and maintaining well being. Dkt. #5, p.493.

On November 8, 2018, O. Fassler, Ph.D., completed a state agency review and determined that plaintiff would have a mild limitation in his ability to understand, remember or apply information and a moderate limitation in his ability to interact with others; concentrate, persist or maintain pace; and adapt or manage himself. Dkt. #5, p.115.

Plaintiff was successfully discharged from chemical dependency treatment at the Evelyn Brandon Health Center on December 13, 2018. Dkt. #5, p.517.

MHC Squicciarini completed a second DHS Employability Assessment on February 14, 2019, indicating that plaintiff was moderately limited in his ability to perform simple and complex tasks independently and to maintain attention and concentration for role tasks. Dkt. #5, p.546. She opined that plaintiff could work approximately 10 hours per week, recommending independent work with clear instructions and a flexible schedule, and noting that plaintiff does not do well in crowds or groups. Dkt. #5, p.547.

MHC Squicciarini completed a third DHS Employability Assessment on May 13, 2019, indicating that plaintiff was moderately limited in his ability to perform simple and complex tasks independently and to maintain attention and concentration for role tasks. Dkt. #5, p.550. She opined that plaintiff could work approximately 5 hours per week, recommending independent work with clear instructions and a flexible schedule, and noting that groups and crowds were contraindicated. Dkt. #5, p.551.

MHC Squicciarini's treatment notes dated June 6, 2019 indicate that plaintiff "continues to report overall reduction in experience of negative symptoms" and has "begun to explore options for potential return to work." Dkt. #5, p.535.

MHC Squicciarini completed a discharge summary for plaintiff on January 3, 2020, indicating that plaintiff "engaged positively in individual therapy;" "identified primary goals of reducing anger outbursts, challenging anxiety, and reducing depression symptoms;" and "found success" using skills developed during individual therapy "to achieve goals." Dkt. #5, p.563. At the time of discharge, plaintiff "denied anger outbursts and anxiety and reported confidence in managing symptoms of depression." Dkt. #5, p.564.

Christine Ransom, Ph.D., conducted an independent consultative psychiatric examination of plaintiff on October 7, 2020. Dkt. #5, p.571. Plaintiff denied all mental health difficulties, including depression, anxiety, panic attacks, manic symptomatology, thought disorder, cognitive deficits and difficulty reading. Dkt. #5, p.571. He presented with adequate hygiene and grooming, adequate expressive and

receptive language skills, neutral mood, coherent and goal directed thought processes, and appropriate affect. Dkt. #5, p.572. His attention and concentration, as well as his recent and remote memory skills, were intact. Dkt. #5, p.572. His cognitive functioning was determined borderline. Dkt. #5, p.572. Dr. Ransom opined that plaintiff would show no evidence of limitation. Dkt. #5, pp.573 & 579-580.

As an initial matter, the ALJ accurately noted that MHC Squicciarini's opinions did not constitute an opinion by an acceptable medical source. Dkt. #5, p.23. In fact, it appears that MHC Squicciarini is a nonmedical source. *See David F. v. Comm'r of Soc. Sec.*, 6:20-CV-6822, 2022 WL 10510389, at *3 n.8 (W.D.N.Y. Oct. 18, 2022) ("Under the new regulations, therapists and social workers without clinical designation are not considered medical sources because they are not "licensed . . . healthcare worker[s]."); 20 C.F.R. § 416.902(i) ("Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law") & 20 C.F.R. § 416.902(j) ("Nonmedical source means a source of evidence who is not a medical source" (effective March 27, 2017 to October 14, 2018). While an ALJ is required to consider all relevant evidence, he is not required to articulate how he evaluated evidence from nonmedical sources as required for medical source opinions. *See Michael K. v. Comm'r of Soc. Sec.*, 20-CV-1467, 2022 WL 3346930, at *6 (W.D.N.Y. Aug. 12, 2022) (ALJ was not required to articulate how he considered vocational counselor's opinion regarding plaintiff's functioning because vocational counselor was a nonmedical source); 20 C.F.R. § 416.920c(d).

In any event, the ALJ recognized that MHC Squicciarini completed "several" DHS Employability Assessments, wherein she opined that plaintiff was unable to perform even simple, unskilled work on a sustained basis. Dkt. #5, p.23. The ALJ determined that this assessment was "not adequately supported by contemporaneous psychiatric treatment notes of clinical observations, and appears to place excessive reliance on the [plaintiff's] subjective reporting." Dkt. #5, p.23. The ALJ specifically noted that depression and anxiety screening conducted by MHC Squicciarini revealed moderate rather than severe depression and anxiety and that plaintiff was never prescribed psychiatric medication for his symptoms. Dkt. #5, p.23. The ALJ also referenced treatment notes from August 13, 2018 indicating that although plaintiff appeared depressed and irritable, his mental status examination was otherwise within normal limits. Dkt. #5, p.23. Furthermore, the ALJ noted that plaintiff had accomplished his goals in therapy with MHC Squicciarini as of December, 2019. Dkt. #5, pp.21 & 23.

As for the opinion of consultative examiner, Dr. Deneen, the ALJ found persuasive his determination that plaintiff had moderate limitations making work related decisions and interacting adequately with others, but could understand, remember and perform simple work. Dkt. #5, p.20. As plaintiff argues, the ALJ did not specifically address Dr. Deneen's determination that plaintiff was moderately limited in his ability to sustain concentration and perform tasks at a consistent pace and in his ability to regulate emotions, control behavior and maintain his well-being. Dkt. #5, p.20. However, the ALJ addressed these functional limitations in his assessment of Dr. Fassler's review of the evidence, wherein he found persuasive Dr. Fassler's opinion

that plaintiff would experience moderate difficulty maintaining concentration, persistence or pace and adapting and managing himself. Dkt. #5, p.22. The ALJ noted that this assessment was more restrictive than the limitations identified by the impartial medical expert, Dr. Efobi, who opined that plaintiff would have mild difficulties in maintaining concentration, persistence or pace and in his ability to adapt and manage himself. Dkt. #5, p.22. The ALJ explained that he "assessed moderate difficulties in the [plaintiff's] ability to adapt and manage himself to limit the claimant to occasional changes in the work setting." Dkt. #5, p.22. The ALJ further explained that he had sufficiently accounted for plaintiff's functional limitations by limiting plaintiff to "performing no more than simple and routine forms of work that minimize his contact with supervisors, co-workers and the public with no more than occasional changes in the work setting." Dkt. #5, p.22.

"In general, moderate nonexertional limitations are sufficiently accommodated where a plaintiff is limited to performing simple work with avoidance of stressors such as production pace work and interaction with coworkers and the public." *Nunez v. Comm'r of Soc. Sec.,* 19-CV-6077, 2019 WL 1771489, at *3 (W.D.N.Y. April 23, 2019). More specifically, restricting a plaintiff to simple, routine work at a non-production pace with only occasional contract with others is sufficient to account for moderate limitations in concentration, persistence and pace. *Pichardo v. Comm'r of Soc. Sec.*, 21-CV-6873, 2023 WL 2596970, at *18 (S.D.N.Y. Mar. 22, 2023). Similarly, limitations in adaptive functioning are often addressed by restrictions in work complexity and interpersonal interaction. *Platt v. Comm'r of Soc. Sec.*, 588 F. Supp.3d 412, 422


(S.D.N.Y. 2022). Thus, moderate limitations in adapting onself can be accounted for by restricting a plaintiff to simple work with no more than occasional interaction with the public and supervisors or changes to a routine work setting. *Hussain v. Comm'r of Soc. Sec.*, 22-CV-3880, 2023 WL 8189750, at *8 (E.D.N.Y. Nov. 26, 2023). "There is no requirement that an ALJ explain exactly which moderate limitation corresponds to which non-exertional limit in the RFC." *Burton D. v. Comm'r of Soc. Sec.*, 22-CV-6825, 2024 WL 1332502, at *16 (E.D.N.Y. Mar. 28, 2024). Thus, the Court finds that the ALJ's determination to restrict plaintiff to unskilled work with no more than occasional interaction with supervisors and the public in a low stress job with no more than occasional changes in the work setting and no production rate or pace work is sufficient to account for plaintiff's mental RFC, which is supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #9), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**March 29, 2024**

                                        **s/ H. Kenneth Schroeder, Jr.**
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**